UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

BILLY GLEN SHEAHAN,

                Petitioner,

v.

JOHANNA K. SMITH,

                Respondent.

Case No. 1:08-CV-00444-EJL

**MEMORANDUM DECISION AND ORDER**

Pending before the Court in this habeas corpus action is Respondent's Motion for Summary Judgment. (Dkt. 19.) The Motion is now fully briefed. Having reviewed the briefing of the parties and the record in this matter, including the state court record, the Court finds that oral argument is unnecessary. Accordingly, the Court enters the following Order denying and dismissing the Petition for Writ of Habeas Corpus with prejudice.

## BACKGROUND

Petitioner's arrest, conviction, and sentence arise from the following set of facts set forth in the Idaho Court of Appeals' opinion on direct appeal, as repeated by the Idaho Supreme Court in its opinion on the petition for review on direct appeal.

Sheahan was arrested for misdemeanor offenses in Shoshone and Kootenai Counties. Fernquist, as co-owner of Access Bail Bonds, posted bail for Sheahan in the aggregate amount of $2800 for Sheahan's release. Sheahan thereafter failed to appear at a pretrial conference for the offenses. The district court issued two bench warrants for Sheahan's apprehension. Under the terms of Idaho's bail statutes, Fernquist was required to have Sheahan appear before the district court within ninety days after Sheahan's missed appearance or risk permanent forfeiture of the posted bail amount.

Fernquist contacted a recovery agent to try to apprehend Sheahan. Fernquist also stopped at Shehan's residence in Pinehurst, Idaho several times searching for Sheahan and left business cards with Sheahan's neighbor. Prior to his attempts to apprehend Sheahan, Fernquist had never attempted to apprehend a bail jumper.

Approximately ten days before the bond's permanent forfeiture, Fernquist made an early morning trip to Sheahan's residence. On this visit, Sheahan shot and killed Fernquist inside the residence. After the shooting, Sheahan eventually went to a friend's house, called 911 and told the dispatcher that he had shot someone who was breaking into his house.

The details of Fernquist's death were disputed at trial. The state's theory of the case was that Sheahan knew that someone would be looking for him because he had failed to appear in court. As Sheahan saw Fernquist coming to apprehend him, Sheahan decided to kill Fernquist. A piece of pipe broken off from other pipe located in Sheahan's garage was found near Fernquist's body. However, it had no fingerprints. Thus, the state suggested that Sheahan placed the pipe near Fernquist to bolster his justifiable homicide claim. Additionally, the state presented evidence that in an incident about five weeks before the shooting, Sheahan had pointed a gun where an officer stood at the threshold of his residence.

Sheahan's theory of the case was that the shooting was justifiable. He stressed that Fernquist was not wearing official clothing that would identify him as an authority figure coming to apprehend Sheahan. Nor did neighbors hear Fernquist announce his presence at the residence. Also, the window in the front door had been broken from the outside. Fernquist had small slivers of glass on his body while Sheahan had none. Thus, Sheahan argued that Fernquist broke in to his residence.

(State's Exhibit B-12; *State v. Sheahan*, 77 P.3d 956, 961 (Idaho 2003)).

**MEMORANDUM DECISION AND ORDER - 2**

At trial, the jury convicted Petitioner of first degree murder. Petitioner was sentenced to a twenty-year fixed term with life indeterminate. Judgment was entered on November 29, 1999.

On direct appeal, Petitioner presented 13 claims of error. (State's Lodging B-1.) The Idaho Court of Appeals vacated the conviction, determining: (1) the jury instruction for "proof beyond a reasonable doubt" misstated the law and was not harmless error; (2) the district court erroneously admitted irrelevant evidence that five and a half weeks before Fernquist was shot, Petitioner had pointed a gun at Officer McDevitt in the doorway of Petitioner's home (the evidence has been admitted to show that Petitioner had a predetermined plan to resist arrest by shooting anyone who came to his home to take him into custody); but (3) the district court properly denied the motion for change of venue. (State's Lodging B-4.)

The State filed a petition for review, asking the Idaho Supreme Court to affirm the original conviction. (State's Lodging B-6.) Petitioner also filed a petition for review asking the Idaho Supreme Court to revisit the district court's denial of the motion for change of venue. (State's Lodging B-5.) Petitioner also sought review of various other claims presented to, but not addressed by, the Idaho Court of Appeals. After granting both petitions for review, the Idaho Supreme Court unanimously affirmed the conviction in *State v. Sheahan*, 77 P.3d 956 (Idaho 2003). (State's Lodging B-12.)

After direct appeal, Petitioner filed an application for post-conviction relief in the state district court. (State's Lodging C-1, pp. 5-19.) The state district court granted the

State's motion for summary dismissal of the application. (*Id.*, pp. 170-76.) Petitioner appealed, and the Idaho Court of Appeals affirmed summary dismissal. (State's Lodging D-4.) The Idaho Supreme Court denied the petition for review and issued its remittitur. (State's Lodgings D-7 & D-8.)

Petitioner next filed a federal pro se Petition for Writ of Habeas Corpus in this action. (Dkt. 3.) The Court appointed counsel Dennis Benjamin to represent Petitioner, who filed an Amended Petition. (Dkt. 5 & 12.)

Currently at issue is Respondent's Motion for Summary Judgment, where Respondent asserts that Claims One and Five are procedurally defaulted (and alternatively subject to denial on the merits), and that Claims Two, Three, Four, and Six were properly exhausted but should be denied on the merits. Petitioner's counsel filed a selective response to the Motion for Summary Judgment, addressing the merits of Claims Three, Four, and Six.

## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

### A.     Standard of Law Governing Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(1)(a). The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure. Rule 11, Rules Governing Section 2254 Cases. Accordingly, summary judgment motions are appropriate in habeas

corpus proceedings where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977).

## B.     Procedural Default

### 1.     *Standard of Law Governing Procedural Default*

A federal habeas petitioner must first exhaust his state court remedies as to all of his constitutional claims before presenting them to the federal court on habeas corpus review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court may deny the claim on its merits, but it cannot otherwise grant relief on unexhausted claims. 28 U.S.C. § 2254(b). The petitioner can satisfy the exhaustion requirement by showing that (1) he has "fairly presented" his federal claim to the highest state court with jurisdiction to consider it, or (2) that he did not present the claim to the highest state court, but no state court remedy is available when he arrives in federal. *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).

To exhaust a habeas claim properly in the state courts, a petitioner must "invok[e] one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. at 845, giving the state courts a full and fair opportunity to correct the alleged constitutional error at each level of appellate review, *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Improperly exhausted claims are deemed "procedurally defaulted." Procedurally defaulted claims include those within the following circumstances: (1) when

a petitioner has *completely failed* to raise a particular claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; or (3) when the Idaho courts have rejected a claim on an independent and adequate state procedural ground.[1]

If a petitioner's claim is procedurally defaulted, the federal district court cannot hear the merits of the claim unless a petitioner meets one of two exceptions: a showing of adequate legal cause for the default and prejudice arising from the default; or a showing of actual innocence, which means that a miscarriage of justice will occur if the claim is not heard in federal court. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

### 2.  *Discussion of Claim One*

Claim One is that Petitioner's Fourteenth Amendment due process rights were violated when the trial court admitted testimony from Officer Todd McDevitt that Petitioner had pointed a gun at McDevitt several weeks prior to the Fernquist killing, even though the court gave a limiting instruction explaining how the evidence was to be considered. On direct appeal, Petitioner raised this issue on state-law grounds only. (State's Lodging B-1, pp. 6-7, 26-31, 48-49; B-7, pp. 36-37; B-10, pp. 27-40). The Idaho Supreme Court likewise addressed the claim as an abuse-of-discretion issue under state evidentiary law. (State's Lodging B-12, pp. 6-8.)

---

[1]  *See Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).

Accordingly, this Court concludes that Petitioner's claim is procedurally defaulted because Petitioner failed to present the claim to the Idaho Supreme Court on federal grounds. Because there has been no showing of cause and prejudice for the default of this claim, nor any showing of actual (factual) innocence, the claim is procedurally defaulted and cannot be heard.[2]

**3.       *Discussion of Claim Five***

Claim Five is that Petitioner was denied his Fifth and Fourteenth Amendment right to due process when the prosecutor repeatedly referred to defense counsel's arguments as misleading, evasive, and untrue in closing argument. Respondent argues that because trial counsel failed to object to the comments, the Idaho Supreme Court was limited to reviewing the statements under its fundamental error doctrine. (State's Exhibit B-12, pp. 14-17.)

Petitioner admitted in his appellate briefing that trial counsel had not objected to the prosecutor's comments, but argued that the comments amounted to fundamental error that denied Petitioner his right to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

At the time Petitioner's case was pending before the Idaho appellate courts, a state court's review of a claim under the fundamental error doctrine can be based on state or

---

[2] The Court agrees with Respondent's analysis of the merits of this claim found in Respondent's Brief and alternatively denies this claim on the merits. (Dkt.19-2, pp. 14-18.)

federal grounds, *see Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2005).[3]

Petitioner clearly raised federal grounds in his state appellate briefing. Therefore, the question becomes whether the failure to object at trial is an adequate state procedural bar resulting in procedural default on federal review, or whether a fundamental error review is the equivalent of a review of the claim on its merits. *See id.* This claim is more efficiently resolved by setting aside the procedural issue and going to the merits, which the Court will address below.

**C.     Merits of Remaining Claims**

**1.     *Standard of Law***

Under the Anti-terrorism and Effective Death Penalty Act (AEDPA), the Court cannot grant habeas relief on any federal claim that the state court adjudicated on the merits unless the adjudication of the claim:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

---

[3] More recently, in *State v. Perry*, the Idaho Supreme Court clarified that only a claim of constitutional error can invoke the fundamental error doctrine, disavowing some prior precedent. 245 P.3d 961, 978 (Idaho 2010).

Section 2254(d)(1) has two clauses, each with independent meaning. For a decision to be "contrary to" clearly established federal law, the petitioner must establish that the state court applied "a rule of law different from the governing law set forth in United States Supreme Court precedent, or that the state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Court's precedent." *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000).

To satisfy the "unreasonable application" clause, the petitioner must show that the state court was "unreasonable in applying the governing legal principle to the facts of the case." *Williams*, 529 U.S. at 413. A federal court cannot grant relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; the state court's application of federal law must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002). The state court need not cite or even be aware of the controlling United States Supreme Court decision to be entitled to AEDPA deference. *Early v. Packer*, 537 U.S. 3, 8 (2002).

To be eligible for relief under § 2254(d)(2), the petitioner must show that the decision was based upon factual determinations that were "unreasonable in light of the evidence presented in the State court proceeding." *Id*.

Under all circumstances, state court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## 2. *Discussion of Claim Two: Reasonable Doubt Instruction*

Claim Two is that the reasonable doubt instruction violated Petitioner's Sixth

Amendment right to a jury trial and his Fourteenth Amendment right to due process. The

jury instruction at issue stated:

> "Proof beyond a reasonable doubt" is proof that leaves you with an abiding conviction of the truth of the charge against the defendant. An abiding conviction is one that would make an ordinary person willing to act in the most important affairs of his or her own life. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof which overcomes every possible doubt. If, based upon your consideration of the evidence, you have an abiding conviction that the defendant is guilty of the crime charged, you must find the defendant guilty. If, on the other hand, you think there is a reasonable doubt as to the defendant's guilt, you must give the defendant the benefit of the doubt and find the defendant not guilty.

(State's Lodging A-2, p. 305.)

To obtain federal habeas corpus relief for errors in the jury charge, a petitioner

must show that the ailing instruction so infected the entire trial that the resulting

conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991). In

reviewing an ambiguous instruction, the Court inquires "whether there is a reasonable

likelihood that the jury has applied the challenged instruction in a way that violates the

Constitution. *Boyde v. California*, 494 U.S. 370, 380 (1990).

The Supreme Court explained how to apply this standard in *Victor v. Nebraska*,

511 U.S. 1 (1994):

> [T]he proper inquiry is not whether the instruction "could have" been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it. The constitutional question in the present cases, therefore, is whether there is a reasonable likelihood that the

> jury understood the instruction to allow conviction based on proof
> insufficient to meet the *Winship* standard.[4]

*Id*. at 6 (emphasis in original; internal citation omitted).

It is well established that an instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.

*Cupp v. Naughten*, 414 U.S. 141 (1973). This means:

> In evaluating the instructions, we do not engage in a technical
> parsing of this language of the instructions, but instead approach the
> instructions in the same way that the jury would–with a "commonsense
> understanding of the instructions in the light of all that has taken place at
> the trial."

*Johnson v. Texas*, 509 U.S. 350, 367 (1993) (citing *Boyde v. California*, 494 U.S. 370, 381 (1990)).

In rejecting the reasonable doubt instruction claim in Petitioner's direct appeal, the Idaho Supreme Court relied on *State v. Gleason*, 944 P.2d 721 (Idaho Ct. App. 1997) (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)), for the principle that "[w]hen reviewing a 'reasonable doubt' instruction, '[t]he Constitution does not dictate that any particular form of words be used in advising the jury of the State's burden of proof, so long as 'taken as a whole, the instructions correctly conve[y] the concept of reasonable doubt.'" (State's Lodging No. B-12, p. 4.) The Court found the instruction adequate, reasoning:

---

[4] In *In re Winship*, 397 U.S. 358 (1970), the United States Supreme Court held that due process requires proof of each element of a criminal offense beyond a reasonable doubt.

The instruction given by the district court adequately states the law for reasonable doubt. The sentence in which the possible doubt language is found states, "There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof which overcomes every possible doubt." In context, the phrase "every possible doubt" is clearly linked to the idea of "absolute certainty." The message to the jury is that doubts that are possible, although not at all reasonable, and that prevent a knowledge to an absolute certainty, do not preclude a juror finding a defendant guilty. The first and last sentence of the paragraph also refer to "reasonable" doubts as those doubts that exonerate a defendant, reinforcing the proper interpretation of the word "possible." This instruction, when taken as a whole, does not lessen the State's burden of proof.

(*Id.* at p. 6.)

Petitioner has made no convincing argument that there is a reasonable likelihood that the jury applied the reasonable doubt instruction in an unconstitutional manner, lessening the State's burden of proof. The Idaho Supreme Court's reasoning is a practical, contextual reading of the instruction, consistent with the mandates of *Cupp v.Naughten* and *Johnson v. Texas*.

The Idaho Supreme Court noted in its opinion that the instruction given closely resembles the Federal Judicial Center's Pattern Criminal Jury Instruction 28 (1988).[5] The United States Court of Appeals for the Ninth Circuit recently acknowledged that, while

---

[5] Federal Judicial Center, *Pattern Criminal Jury Instruction 28* (1988), provides:

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

other circuits have criticized the Pattern Instruction containing the language Petitioner finds objectionable, no court has "in fact held the use of the instruction to be reversible error." *See United States v. Mejia*, 597 F.3d 1329, 1340 (9th Cir. 2010). Circuit cases aid a federal district court in whether a state court decision is within the scope of "reasonable" applications of Supreme Court law. *Duhaime v. Ducharme,* 200 F.3d 597 (9th Cir. 1999). Further, the United States Supreme Court has noted that "the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994).

For all of the foregoing reasons, Petitioner has not shown that the Idaho Supreme Court's decision concluding that the reasonable doubt instruction was adequate and appropriate is contrary to, or involved an unreasonable application of, clearly established Federal law. Therefore, habeas corpus relief is not warranted on Claim Two.

### 3. *Discussion of Claim Three: Ineffective Assistance on Malice Instruction*

Claim Three is that Petitioner was denied ineffective assistance of counsel when his trial attorney failed to object to the second paragraph of Instruction 13 on malice. Both parties agree that the first paragraph of the malice instruction was a proper definition of malice under Idaho Code § 18-4002, but inclusion of the second paragraph, taken from Idaho Code § 18-101, improperly gave an incorrect alternative definition of malice. Petitioner contends that the error lowered the State's burden of proof, while Respondent argues that the error was harmless.

The Court first looks to the statutory definitions relevant to the charged crime.

Idaho Code § 18-4001 (1977), in pertinent part, defines murder:

Murder is the unlawful killing of a human being . . . with malice aforethought or the intentional application of torture to a human being, which results in the death of a human being.

Idaho Code § 18-4002 (1972) defines malice as it relates to homicide:

Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.

Idaho Code § 18-4003 (1991), in pertinent part, defines first degree murder:

All murder which is perpetrated . . . by any kind of willful, deliberate and premeditated killing is murder of the first degree.

The jury instructions used in Petitioner's trial that were intended to instruct the

jury of the statutory elements of the crime of First Degree Murder are as follows:

Instruction No. 11B provided:

In every crime or public offense there must exist a union or joint operation of act and intent.

(State's Exhibit A-2, p. 314.)

Instruction No. 13 provided:

Murder is the killing of a human being without legal justification or excuse and with malice aforethought. Such malice may be express or implied. It is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow human being. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.

Malice as used in these instructions does not require any ill will or hatred toward the person killed, but only the desire to annoy or injure another or the intent to do a wrongful act.

(State's Exhibit A-2, p. 316.) The erroneous statement about the mere "desire to annoy or injure" appears in the second paragraph of the instruction.

Instruction No. 13A provided:

In order for the defendant to be guilty of murder, the state must prove each of the following:

1.    On or about April 2, 1999

2.    in the state of Idaho

3.    the defendant, Billy Glen Sheahan, engaged in conduct, which caused the death of Darrell L. Fernquist

4.    the defendant acted without legal justification or excuse, and

5.    with malice aforethought.

If you find that the state has failed to prove any of the above, then you must find the defendant not guilty of murder. If you find that all of the above have been proven beyond a reasonable doubt, then you must decide whether the defendant is guilty of First Degree Murder.

In order for the defendant, Billy Glen Sheahan, to be guilty of First Degree Murder, the state must prove that the murder was a willful, deliberate, and premeditated killing.

Premeditated means to consider beforehand whether to kill or not to kill, and then to decide to kill. There does not have to be any appreciable period of time during which the decision to kill was considered, as long as it was reflected upon before the decision was made. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not premeditation.

If you unanimously agree that the state has proven the above special circumstance of premeditation beyond a reasonable doubt, then you must find the defendant guilty of First Degree Murder. If you unanimously agree that the special circumstance of premeditation has not been proven beyond a reasonable doubt,

> but have found the defendant guilty of murder, you must find the
> defendant guilty of Second Degree Murder.

(State's Exhibit A-2, pp. 317-18.)

Petitioner's argument is that his counsel was constitutionally ineffective for failing to object to the second paragraph of Instruction 13, the malice instruction, as erroneous.

The law is clearly established that a criminal defendant has a constitutional right to the assistance of counsel under the Sixth Amendment, made applicable to the states by the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335 (1963). In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established the proper test to be applied to claims alleging constitutionally inadequate representation. To succeed on such a claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and that (2) the petitioner was prejudiced thereby. *Id*. at 684. Prejudice under these circumstances means that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

In reviewing Petitioner's case on post-conviction review, the Idaho Court of Appeals determined that Petitioner's trial counsel's performance was deficient under the first prong of *Strickland* when counsel failed to object to the jury instruction that included an alternative definition of malice as "only the desire to annoy or injure another or the intent to do a wrongful act." *Sheahan v. State*, 190 P.3d 920, 923 (Idaho Ct. App.

2008); (State's Lodgings A-2, p. 316 & A-4 at 955:13-24.) The erroneous nature of this instruction was made plain years before in *State v. Dillon*, 471 P.2d 553, 568 (1970), where the court held that the § 18-101 general definition of malice is not to be used in the instructions in a murder case, because malice aforethought, as used in the homicide statutes (§ 18-4002) "imports something more than a 'wish to vex, annoy, or injure another person.'" *Id.*

The Idaho Court of Appeals analyzed whether the error prejudiced Petitioner's defense. The court determined that Petitioner did not show that there was a reasonable probability that, but for the error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. In particular, the Idaho Court of Appeals concluded that "the jury's finding that the murder was premeditated eliminates any possibility that the jury relied upon the incorrect portion of the malice instruction." (State's Exhibit D-4, p. 5.)The court reasoned: "Because, the jury found that he premeditated the murder, forming the intent to kill in advance of committing the act, the guilty verdict could not have been affected by the erroneous instruction indicating that the malice element could be satisfied by a mere 'desire to annoy or injure another or the intent to do a wrongful act.'" (*Id.* at p. 6.)

Because a petitioner must establish both deficient performance and prejudice to prove an ineffective assistance of counsel violation, Petitioner's claim did not warrant relief. The denial of relief on post-conviction review was affirmed by the Court of

Appeals. The Idaho Supreme Court denied the petition for review without comment. (State's Lodging D-7.)

While Petitioner makes an argument that has much surface appeal–that the Court of Appeals mixed up two separate elements required for a verdict of first murder–this Court concludes that, under the totality of circumstances, the Idaho Court of Appeals' determination was not objectively unreasonable. There are two ways to view the jury instructions in light of the circumstances. Petitioner argues for a literal and technical interpretation, focusing on each element of the crime of conviction in isolation, rather than on how the elements and jury instructions can be read together. The Idaho Court of Appeals rejected Petitioner's argument, applying a practical and holistic interpretation, searching beneath the surface of the words to the meaning behind the elements of the crime and construing the jury instructions together in a commonsense way–an interpretation that is both objectively reasonable and persuasive.

Idaho law provides that "malice" is a state of mind that is a required element of both first and second degree murder. *Carey v. State*, 429 P.2d 836 (1967). As noted above, the statute governing malice in the homicide context provides for two particular types of malice: (1) express, "when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature," or (2) implied, "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned

and malignant heart." Idaho Code § 18-4002. In other words, by statutory definition, malice can, but does not necessarily, include a deliberate intent to kill.[6]

Once malice is found, the difference between first and second degree murder is that first degree murder requires the elements of "willfulness" ("the intent to take life"), "premeditation" ("conceived beforehand") and "deliberation" ("done with reflection"). *State v. Aragon*, 690 P.2d 293, 298 (Idaho 1984). A comparison of the definition of express malice with the definitions of willfulness and deliberation shows some obvious overlap in the meanings of these elements.

Manslaughter, on the other hand, differs from both degrees of murder because it contains no malice element. I.C. § 18-4006. Rather, the law deems a killing done with adequate provocation while in the heat of passion or a sudden quarrel–even if done with intent to kill–a killing without malice.

Finally, the statutory scheme governing homicide provides that justifiable or excusable homicide–warranting acquittal–includes circumstances where a killing is the result of an intentional act, without malice or premeditation, but with justification or excuse.

The key question in Petitioner's habeas corpus claim is whether the Idaho Court of Appeals unreasonably confused two different elements of the crime of First Degree

---

[6] The Idaho Code also provides for a general definition of malice in §18-101, "to vex, annoy, or, or injure another or the intent to do a wrongful act," that is not to be applied in homicide cases, but which *was* supplied to the jury in this case, along with the proper definition of express and implied malice from § 18-4002.

Murder to affirm Petitioner's conviction, or whether the Idaho Court of Appeals was reasonable in determining that because the jury found premeditation, it also necessarily found the requisite type of malice in § 18-4002 and not merely the intent to "annoy, or injure another or the intent to do a wrongful act," in § 18-101. (State's Lodging A-2, p. 316.)

The relationship between malice and premeditation has been probed by legal scholars and jurists for as long as the two terms have been employed in homicide law. A historical review of the manner in which malice and premeditation have been used demonstrates that the viewpoint adopted by the Idaho Court of Appeals in Petitioner's case is not objectively unreasonable.

A Stanford Law Review note from 1958 expounded on the same line of reasoning underlying the Idaho Court of Appeals' decision:

> If premeditation be taken in its ordinary meaning of prior decision, its legal significance becomes obvious. Express malice connotes advertence and desire at the time of the killing, and premeditation is simply the same state of mind occurring before the killing. As such, it must necessarily involve express malice extending in time from sometime before the actus reus up through its consummation. In such a case, a finding of premeditation would necessarily include a finding of express malice. Thus any premeditated killing would necessarily involve both malice and aggravation without the necessity of stopping to spell out the proposition that premeditation includes express malice. The guilty advertence is qualitatively the same in both express malice and premeditation, and they differ only in their times of occurrence in relation to the killing.

Note, *Mens Rea and Murder by Torture in California*, 10 Stanford Law Review 672, 681-82 (July 1958).

In 1989, the Idaho Supreme Court noted the interplay between malice and premeditation in *State v. Lankford*, 781 P.2d 197 (1989), *cert. denied*, 497 U.S. 1032 (1990), relying on reasoning from the 1972 treatise, *Criminal Law*, authored by Wayne R. LaFave and Austin W. Scott, Jr.:

> Murder is a common law crime whose complete development required several centuries. Though murder is frequently defined as the unlawful killing of another "living human being" with "malice aforethought," in modern times the latter phrase does not even approximate its literal meaning. Hence it is preferable not to rely upon that misleading expression for an understanding of murder but rather to consider the various types of murder (typed according to the mental element) which the common law came to recognize and which exist today in most jurisdictions:
>
> (1) intent-to-kill murder;
>
> (2) intent-to-do-serious-bodily-injury murder;
>
> (3) depraved-heart murder; and
>
> (4) felony murder.
>
> ....
>
> At first the judges in fact did require for murder that the defendant actually have a previously thought-out (i.e., premeditated) intent to kill, though probably the spite, etc., was never actually necessary.
>
> ....
>
> Thereafter the judges started to invent some new types of murder where there existed no premeditated intent to kill. First of all, when the defendant intentionally killed his victim in a heat of passion aroused in him by the conduct of the victim-the issue being whether the defendant should be guilty of murder or of voluntary manslaughter-the judges decided that manslaughter required that the defendant's passion be reasonable.
>
> ....

The judges still continued to say that murder is committed by one who unlawfully kills another "with malice aforethought," now however adding the phrase "express or implied," the word "implied" covering the four situations just described wherein literally there exists no premeditated intent to kill. Modern courts and legislatures still frequently define murder in terms of "malice aforethought, express or implied," by which they mean the same types of murder as those which the English judges ultimately recognized, including felony murder, depraved-heart murder, intent-to-do-serious-bodily-injury murder and murder committed in an unreasonable passion.

*Lankford*, 781 P.2d at 203-04 (quoting W. LaFave and A. Scott, Jr., *Criminal Law* § 67 Murder-"Malice Aforethought" and "Living Human Being," pp. 528-530 and § 7 "Felony Murder," pp. 545-547 and 554 (1972)).

The foregoing history of homicide law shows that it is a common and reasonable view that where there is premeditation, there is also malice, warranting the first degree murder label. (The converse is not true, nor is that argument relevant in this case.) In this context, the Idaho Court of Appeals' determination that the jury instructions in Petitioner's case clearly conveyed the proper meaning of the law to the jury is not objectively unreasonable.

To bolster his argument that the Idaho Court of Appeals' decision was unreasonable, Petitioner relies upon several quotations from Idaho case law that have been taken out of context. Petitioner argues that the Idaho Supreme Court has stated that malice "is not synonymous with premeditation." *State v. Enno*, 807 P.2d 610, 622 (1991). However, the specific question in *Enno* was whether there was a legal distinction between

malice and malice aforethought; the Idaho Supreme Court found there was no distinction. *Id*. This point is unhelpful to Petitioner's argument.[7]

Further, *Enno* relied upon *State v. Dillon* for the statement that "'malice aforethought' is not synonymous with premeditation." *Enno*, 807 P.2d at 622 (citing *State v. Dillon*, 93 Idaho 698, 471 P.2d 553 (1970)). That statement is merely a summary of the following discussion in *Dillon* that is akin to Petitioner's challenge to the Idaho Court of Appeals' determination that the premeditation instruction cured the lower-standard-of-malice instruction:

> [Dillon's] primary contention is that the expressions 'malice' and 'malice aforethought' are misdefined and misused in the district court's instructions. Appellant's first objection concerns the trial court's definition of malice in terms of I.C. § 18-101(4):

_____

[7] *Enno* is actually helpful to Respondent's argument on the question of intent in that the Idaho Supreme Court reviewed the instructions in a holistic manner and determined that together, they clearly required the jury to find intent to kill in order to convict Enno of first degree murder, and that no distinction need be made between general and specific intent:

> We note that the distinction between general intent and specific intent is a difficult distinction and has been abandoned in the Model Penal Code. *See* LaFave, W. and Scott, A., Jr., Criminal Law § 28, p. 202 (1972). The jury need not be instructed in the esoteric distinctions between general and specific intent. In the present case the instructions to the jury repeatedly emphasized that before Enno could be convicted he must have acted with the intent to kill Freeman. We specifically hold that the jury instructions, when read and considered as a whole, adequately instructed the jury concerning the elements of murder in the first and second degree and manslaughter, and the distinctions between each including intent. This is sufficient to instruct the jury and we find no reversible error.

807 P.2d at 622.

'The words 'malice,' and 'maliciously,' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law.'

This definition under the statute is not applicable in a murder case. The concept of 'malice' as that term is used in I.C., Title 18, Chapter 40, Homicide, imports something more than a 'wish to vex, annoy, or injure another person * * *.' If, however, the jury is fully instructed concerning the frame of mind required by I.C. § 18-4002, 'Express and Implied Malice,' any error of the I.C. § 18-101 instruction is rendered harmless. The jury was so instructed in this case, and, therefore, no prejudice was suffered by appellant on account of the erroneous instruction.

The district court's instruction number six defined 'malice aforethought' as 'malice and premeditation.' This instruction should not have been given, because 'premeditation' is the word used to denote a mental element which distinguishes murder in the first degree from murder in the second degree, and, therefore, ran the risk of confusing the jury. It was not, however, harmful error. Following the case of *State v. Dong Sing*, such an instruction, if given only to describe to the jury the elements of first degree murder, and not given in an attempt to differentiate between the two degrees of murder, is not cause for a reversal if the jury was adequately instructed elsewhere concerning the distinction between the two degrees of murder. The jury in this case was properly instructed on the different degrees of murder and other types of homicide and the distinctions between them.

*Dillon*, 471 P.2d at 569.

In Petitioner's case, the Idaho Court of Appeals reached the conclusion that it was impossible for the jury to have convicted Petitioner of first degree murder without having concluded that he acted with the requisite type of malice. This is the type of "commonsense" approach that should be employed, viewing "the instructions in the light of all that has taken place at the trial." *Johnson v. Texas*, 509 U.S. at 367 (citing *Boyde v. California*, 494 U.S. at 381.

Jury Instruction No. 13A specifically instructed: "In order for the defendant, Billy Glen Sheahan, to be guilty of First Degree Murder, the state must prove that the murder was a willful, deliberate, and premeditated killing." (State's Lodging A-2, p. 317.) These three terms, along with the more detailed definition of premeditation ("to consider beforehand whether to kill or not to kill, and then decide to kill") make implausible Petitioner's argument that, viewing the jury instructions as a whole, the jury could have found that Petitioner intended merely to "annoy, or injure" the victim when Petitioner shot him. The instructions correctly required a finding that Petitioner had the intent to kill–both before and at the time of the killing–in order to conclude that the crime of first degree murder applied.

Here, the effect (or, more appropriately, the non-effect) of the erroneous alternative malice instruction is evident from the jury's conclusion that the murder "was a willful, deliberate, and premeditated" killing, as instructed by Jury Instruction 13A (State's Lodging A-2, p. 317.) It is impossible for the jury to have found that Petitioner had an intent merely to annoy or injure *and* that Petitioner killed with willfulness, deliberation, or premeditation. It is also clear that the jury found the killing to be "unlawful"– a word that distinguishes the element of malice from the element of premeditation–because the jury rejected Petitioner's defense of excusable or justifiable homicide.

The outcome of Petitioner's appeal or this habeas corpus proceeding likely could have been different had the jury found Petitioner guilty of a lesser-included offense. For

example, while the jury could have excluded justifiable homicide from consideration if it found that Petitioner had merely an intent to annoy or injure (under the erroneous malice instruction), here, the jury obviously found a greater degree of intent–intent to kill–under the first degree murder instruction. The excusable homicide statute clearly does not excuse a person who has premeditated the killing. In other words, the finding of premeditation excludes excusable homicide from the jury's list of possibilities; in fact, it excludes all lesser forms of homicide. Respondent has characterized this analysis in practical language: "the finding of premeditation in this case constituted a higher level of intent than malice." (Reply, p. 3, Dkt. 28.) Stated another way, because the first degree murder instruction (containing the premeditation instruction) necessarily required the jury to find that the murder was a "willful, deliberate, and premeditated killing" (with premeditation defined as "to consider beforehand whether to kill or not to kill, and then decide to kill"), the instruction foreclosed the jury from concluding that first degree murder could arise when there was merely an intent to annoy, injure, or do a wrongful act.

Because Petitioner has failed to show prejudice, the second prong of the *Strickland* test, his claim fails. Accordingly, the Court cannot conclude the appellate court's decision was objectively unreasonable. Therefore, Petitioner is not entitled to habeas corpus relief on Claim Three.

### 4.    *Claim Four: Ineffective Assistance of Appellate Counsel*

Claim Four, based on the Sixth and Fourteenth Amendment, is that appellate counsel was ineffective for failing to raise the malice instruction error on direct appeal. The *Strickland* standard applies to determining ineffective assistance of appellate counsel claims. *Evitts v. Lucey*, 469 U.S. 387 (1985). "Effective legal assistance" does not mean that appellate counsel must appeal every question of law or every nonfrivolous issue requested by a criminal defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). "[N]othing in the Constitution" requires "judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable claim' suggested by a client." *Id*. at 754. To show prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the petitioner would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

In the post-conviction matter, the Idaho Court of Appeals determined:

> Sheahan's claim for ineffective assistance of his appellate attorney similarly fails for lack of evidence of prejudice. We need not determine whether the attorney was deficient in not raising on appeal a claim of fundamental error in the faulty jury instruction to which trial counsel had not objected, for if an appellate court had addressed the issue, it would necessarily have found the error harmless.

(State's Exhibit D-4, p. 7.)

The Court agrees that Petitioner cannot overcome the lack of prejudice to meet the second prong of *Strickland*. Because a review of the jury instructions as a whole shows that they fairly and adequately presented the issues and stated the law, as discussed above,

the claim would not have resulted in the appellate court concluding that the claim had merit.

Petitioner correctly argues that his direct appeal counsel could have raised the erroneous malice instruction on direct appeal as a regular reviewable claim and not as "fundamental error." In 1999, at the time of Petitioner's conviction, Idaho Criminal Rule 30 (by virtue of an 1986 amendment) did not include the notion that the failure to object to a jury instruction at trial waived any objection to the instruction on appeal. *See State v. Smith*, 786 P.2d 1127, 1131 (1990). In 2000, the Rule was again amended, this time to include the failure to object waiver provision. Between 1986 and 2000, errors identified in jury instruction errors but not objected to at trial could be appealed, not as fundamental error, but under the standard governing erroneous jury instructions.

However, even if counsel had raised the malice error on direct appeal so that it was not heard as a fundamental error claim or an ineffective assistance of counsel claim, it would not have been deemed reversible error. Under either state or federal jury instruction standards or the *Strickland* prejudice standard, the error would not have resulted in reversal because, for all of the reasons set forth above, the "instructions, when taken as a whole, [did not] mislead the jury or prejudice[] a party," *Silver Creek Computers, Inc. v. Petra, Inc.*, 42 P.3d 672, 675 (Idaho 2002), nor did the error infect the entire trial that the resulting conviction violated due process, *see Estelle v. McGuire*, 502 U.S. at 72, nor is there a reasonable likelihood that the jury applied the challenged instruction in a way that violated the Constitution. *Boyde v. California*, 494 U.S. at 380.

Petitioner also argues that direct appeal counsel would have had more "error" to cumulate for a cumulative error claim on direct appeal had counsel challenged the malice instruction as fundamental error on direct appeal. Under Idaho law, to find cumulative error, the appellate court must first find that there is merit to more than one error, and then conclude that the errors, even though harmless individually, when aggregated acted to deny the defendant a fair trial in violation of his right to due process. *See State v. Gray*, 932 P.2d 907, 927 (Idaho Ct. App. 1997). The right to due process does not guarantee a defendant an error-free trial. *See State v. Peite*, 839 P.2d 1223, 1236 (Idaho Ct. App.1992).

The errors that would have been cumulated on direct appeal were: (1) the "annoy or injure" error in the second paragraph of the malice instruction; (2) the errors in the prosecutor's closing argument where defense counsel was characterized as misleading or lying to the jury (discussed in detail below); and (3) the error in admitting the testimony of the victim's business partner that the victim never used a weapon to take someone into custody, when there was no foundation that the victim had ever tried to apprehend anyone previously. (State's Lodging B-12.)

Here, the cumulative effect of these errors, when viewed in relation to all of the evidence presented at trial, did not deprive Petitioner of a fair trial. The totality of jury instructions fairly reflected the law and evidence, notwithstanding the incorrect portion of the malice instruction. The prosecutor's wrongful remarks suggesting that defense counsel was lying were presented in the context of the State's theory of the case that

Petitioner was lying by having staged a break-in; in addition a jury instruction counteracted the remarks, as discussed more fully below. It was clear from the evidence presented that the victim did not carry a gun to the scene; whether he used a pipe as a weapon was a point covered by much evidence and argument from both sides, and, thus, the business partner's opinion as to whether the victim had a weapon was almost inconsequential. Accordingly, because the errors did not result in an unfair trial when considered together, Petitioner's cumulative error claim is without merit, whether under AEDPA or on de novo review.

5. *Discussion of Claim Five*

As noted above, Petitioner argues that the prosecutor attacked the credibility of defense counsel in closing argument, suggesting to the jury that counsel was deceiving and lying to the jury, which Petitioner challenges on due process grounds. No objections to the comments were made at trial. The Idaho Supreme Court concluded that, although the prosecutor's statements were in error, they were not fundamental error warranting reversal.

It is clearly established that personal attacks made by the prosecution on defense counsel in closing argument are improper, and that argument should be confined to evidence in the record. *United States v. Young*, 470 U.S. 1, 9-10 & 9 n.7 (1985). "It should come as no surprise that 'in the heat of argument, counsel do occasionally make remarks that are not justified by the testimony, and which are, or may be, prejudicial to

the accused.'" *Young*, 470 U.S. at 10 (quoting *Dunlop v. United States*, 165 U.S. 486, 498 (1897)).

Whether improper comments warrant reversal on habeas review is a "narrow [issue] of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). A prosecutor's comments or actions that may be considered inappropriate under rules of fair advocacy, or even reversible error on direct review, will not warrant federal habeas relief unless the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643.

The Idaho Supreme Court relied upon *United States v. Young* and state law cases that are comparable to the standard set forth above. The prosecutor's statements found to be erroneous are the following:

> The defense last week tried to hide the facts and to mislead you in your search for those facts. And that began with defendant's opening statement in which [defense counsel] said that Billy Sheahan was cooking breakfast, frying bacon on April 2nd, when the defendant stated that they employed an expert and that expert somehow forced the state to change its story or to differ. Both of those statements by [defense counsel] in his opening statement were proved false by the testimony adduced by the defendant. And that distortion continued and ended with the introduction of Defendant's Exhibit No. 9, the video of the breakfast that was supposedly being cooked, the bacon, the hamburger, left in an open container in a heated house for nine days, defying both the laws of nature and chemistry. . . .
>
> Yet, [defense counsel] has, throughout this trial, tried to establish something that is not in evidence by his argument. Apparently acceding to that other maxim that if you tell a lie enough times and often enough, people are going to believe it.

In this case, ladies and gentlemen, you shouldn't believe or base a determination on mere assertions. You have to look at the facts. There are no facts that Darrell broke in. In fact, if you look at the testimony of the whole, and I'm not going to go on, the road department personnel, of Roy Carlson, of Penny Fernquist, about Darrell's intent, you will see that he never had an intent to do that.

(State's Lodging B-12, p. 14 n.6 & p.15 n.7.)

Having reviewed the foregoing statements made by the prosecutor during closing argument, the Idaho Supreme Court determined:

> The prosecutor's comments during closing argument that defense counsel had misled and lied to the jury were improper. It would appear that the comments were intended to inflame the minds of jurors and arouse passion or prejudice against the defendant based upon asserted misconduct of defense counsel. However, from the context of the statements by the prosecutor it appears that he was analyzing the credibility of defense counsel's evidence and the inference that defense counsel was making from the evidence. The statements were improper, but no limiting instruction was requested. While improper, they do not rise to the level of a fundamental error warranting reversal.

(*Id.*, pp. 15-16.)

This Court agrees that, while improper, the prosecutor's comments were expressly tied to the State's theory of the case and the specific evidence in the case: the State was trying to prove that Petitioner killed the victim to avoid apprehension and that he created an elaborate scheme to make it look like the victim broke into his house during an alleged two-hour gap between the time Petitioner's neighbor saw the victim's truck outside Petitioner's house and the time Petitioner called 911. The prosecutor presented an appropriate theory, but was not careful in how he presented his argument that the evidence showed that Petitioner's defense was untrue. The prosecutor simply went too far

in trying to support his theory by suggesting that defense counsel was actively trying to mislead and lie to the jury rather than simply trying to put on a good defense for Petitioner. (Dkt. 30, pp. 967-977 & State's Lodging A-4, pp. 1011-19.)

Not only were the remarks tied to the theories of the case and defense, the remarks were, in part, neutralized by Jury Instruction No. 11, which instructed the jury to remain independent and not rely on counsels' arguments as evidence:

> Certain things you have heard or seen are not evidence, including:
>
> 1.     arguments and statements by lawyers. The lawyers are not witnesses. What they say in their opening statements, closing arguments and at other times is included to help you interpret the evidence, but is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, follow your memory;

(State's Lodging A-2, p. 312.)

Given that the wrongful statements were aimed at discussing the evidence and were intended to support the State's factual theory of the case, and that a jury instruction addressed the nature of closing arguments, the Court concludes that the Idaho Supreme Court's decision that fundamental constitutional error did not occur as a result of the wrongful statements is not objectively unreasonable, nor is it contrary to *Darden* or *Donnolly*. The prosecutor's several comments accusing defense counsel of being untruthful in the context of the State's entire theory that Petitioner had fabricated the evidence to support his defense did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Alternatively, the remarks did not violate

due process under a de novo standard of review. Accordingly, Petitioner's claim for habeas corpus relief is denied.

### 6. Claim Six: Insufficient Evidence Claim

Claim Six is that Petitioner's Fourteenth Amendment right not to be convicted except upon proof of sufficient evidence was violated because there is insufficient evidence in the record to support the jury's first degree murder verdict.

*In re Winship*, 397 U.S. 358 (1970), set forth the principle that due process requires proof of each element of a criminal offense beyond a reasonable doubt. Sufficient evidence supports a conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Further, "all of the evidence is to be considered in the light most favorable to the prosecution." *Id*. However, "if the historical facts would support conflicting inferences, the federal court 'must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.'" *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992) (citing *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)).

On federal habeas review, a court is to "apply the standards of *Jackson* with an additional layer of deference." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (citing 28 U.S.C. § 2254(d)). Thus, only if the Idaho Supreme Court unreasonably applied the *Jackson* and *Winship* standards, may a writ of habeas corpus issue for evidentiary insufficiency. *Id*. at 1274-75. The *Jackson* standard "must be applied with explicit

reference to the substantive elements of the criminal offense as defined by state law."

*Jackson*, 443 U.S. at 324 n.16.

The Idaho Supreme Court relied on state case law that was the substantial equivalent of the *Jackson* standard. (State's Exhibit B-12, p. 23.) Petitioner argued on appeal that where all of the evidence presented is circumstantial, a different standard of proof should apply. (*Id*. at p. 24.) The Idaho Supreme Court rejected that theory, noting: "The evidence must be analyzed on the basis of whether there was proof beyond a reasonable doubt, whether that evidence be direct or circumstantial." (*Id*.)

The Idaho Supreme Court concluded that substantial evidence supported the jury verdict, citing all of the following evidence presented at trial:

> Fernquist had been looking for Sheahan for several months prior to the shooting. Sheahan had failed to appear for pretrial conferences and had warrants out for his arrest. He should have known that Fernquist or the police were looking for him. Fernquist had spoken with several of Sheahan's friends and neighbors and left business cards with them. Two of Fernquist's business cards were found in the top drawer of Sheahan's dresser. Sheahan would likely have known Fernquist when he entered his residence as they had met before. Sheahan showed his desire to evade legal action against him by ignoring pretrial conference appointments and evading those that posted bail for him, from which the jury could find his willingness to again try to evade arrest when Fernquist appeared. This inference is supported by testimony that material was taped over the windows in Sheahan's residence and bags had been placed over the lights in his residence. The jury could determine from the incident where Sheahan pointed a gun at the door where an officer stood that he had premeditated or planned to kill anyone who sought to apprehend him on the warrants, including Fernquist. The evidence also shows that Sheahan removed bags from his hands after being taken into custody, despite being told not to by police, from which the jury could find consciousness of guilt and efforts to destroy evidence. The jury could also find from the fact that the pipe lying

next to Fernquist's body had no fingerprints on it that Sheahan had put it there to support his claim of self-defense.

(*Id*., pp. 24-25.)

The factual context of this case is important to determining the sufficiency of the evidence. The parties stipulated before trial, and provided in Jury Instruction 4A:

> [A]t the time of Mr. Fernquist's death, Billy G. Sheahan had failed to appear for a Pretrial Conference on misdemeanor cases in Shoshone County and Kootenai County and Bench Warrants were issued for his apprehension.

(State's Lodging A-2, p. 304.) The evidence cited by the Idaho Supreme Court is sufficient to support the jury's verdict.

These facts do not support Petitioner's theory that he was defending against a random break-in or even that he was defending against great bodily harm at the hands of the bondsman. In closing argument, the prosecutor questioned why Petitioner forewent the option of running out his kitchen door to avoid contact with the intruder in favor of running to his bedroom to retrieve a gun. (State's Lodging A-4, p. 1017, referring to testimony of Idaho State Police Investigator Curtis Kastens: "The door that I eventually started using for egress and ingress [during the investigation] was this door here, which would access to a kitchen area..." State's Lodging A-4, p. 650.)

Enough evidence was presented at trial to allow the jury to infer that Petitioner had acted in accordance with a plan or motive to kill. While the trial judge made some comments at sentencing suggesting that the evidence was rather thin, he also deferred to the jury finding and observed:

I think the overwhelming evidence is you knew it was Mr. Fernquist who was coming in, and Mr. Fernquist was the bondsman who had posted the bond, and you weren't doing what you were supposed to do under the bond. And in that sense, by shooting the bondsman, you are in essence attacking not only the bondsman, not only the individual, you are attacking bondsmen. You are attacking law enforcement. You are attacking society itself. Because there is no threat to your safety when the bondsman is coming after you. The threat is that you are going to go to jail. And there is no excuse for shooting somebody under those circumstances.

(State's Lodging A-4, p. 1067.)

This is a somewhat unusual case where all of the evidence was circumstantial, and the jury had to make many reasonable inferences to decide the outcome of the case. The facts of Petitioner's case are like those found in *State v. Thacker*, 164 S.W.3d 208, 222-23 (Tenn. 2005), where the court determined that there was sufficient evidence to support a premeditated killing conviction based on reasonable inferences:

In the present case, there was sufficient evidence from which the jury could infer premeditation. First, the defendant stated that when he attempted to pay for the wrecker service and the credit card was rejected, he stabbed the victim and left because he "knew [he] was wanted in other states." From these facts the jury could easily and reasonably infer that the moment the credit card was rejected the defendant realized that it would not be long before law enforcement authorities were notified and he would be apprehended for his earlier crimes. This establishes a motive for the killing. The jury could infer that the defendant's motive was to further elude capture by eliminating the victim as a witness. *See Sims*, 45 S.W.3d at 8 (establishment of a motive as ground for inferring premeditation). Further, the jury could reasonably conclude that the defendant exercised reflection and judgment in forming an intent to kill the victim as soon as the credit card was rejected, but prior to the actual act of killing. *See* Tenn.Code Ann. § 39-13-202(d) (1997) (act is premeditated if "done after the exercise of reflection and judgment").

*Id.* at 222-23.

The trial transcript demonstrates that, certainly, some facts were presented at trial that were favorable to Petitioner's theory. However, sufficient facts were presented upon which the jury could find that the requisite elements existed in Petitioner's reactions and actions to hold him accountable for first degree murder. The Court rejects Petitioner's position that the jury was required to find that the homicide was justifiable just because some evidence of a "break in" was presented.

The jury instructions provided adequate guidance to the jury on the elements of the crimes and defenses, the circumstances of the nonappearance at court and warrant, the relationship between Petitioner and the victim, and the legal boundaries of a bondsman's right to apprehend a person who has failed to appear.

Jury Instruction No. 15 provided, in pertinent part:

> Under the law, a homicide is justifiable if it is committed in defense of habitation, property or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends or endeavors, in a violent, riotous, or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person there. However, the bare fear of such acts is not sufficient unless the circumstances are sufficient to create such a fear in a reasonable person and the defendant acted under the influence of the fears alone.

Jury Instruction No. 15b provided:

> The kind and degree of force which a person may lawfully use in self-defense are limited by what a reasonable person in the same situation as such person, seeing what the person sees and knowing what the person knows, then would believe to be necessary. Any use of force beyond that is regarded by the law as excessive. Although a person may believe that the person is acting, and may act, in self-defense, the person is not justified in using a degree of force clearly in excess of that apparently and reasonably necessary under the existing facts and circumstances.

Jury Instruction No. 15C instructed:

> For the purpose of surrendering the defendant, a person who provided bail for the defendant, at any time before they are finally discharged, and at any place within the state, may themselves arrest him. Where the defendant refuses to surrender himself to the bondsman upon notice from the bondsman to do so, the bondsman may use reasonable and necessary force to effect the arrest, but may not use unnecessary and excessive force.

(State's Lodging A-2, p. 326.)

Whether the victim used reasonable and necessary force, whether the victim gave notice of his attempt to apprehend Petitioner, and how Petitioner acted "seeing what [he saw] and knowing what [he knew]" was within the province of the jury to decide based on all of the evidence, and, here, the Court must resolve all conflicting inferences in favor of the prosecution. Given the totality of circumstances, Petitioner has not convinced the Court that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt in these particular circumstances. *See Jackson v. Virginia*, 443 U.S. at 319. The Court concludes that sufficient evidence supports the guilty verdict, the Idaho appellate court's decision was not objectively unreasonable, and Petitioner is not entitled to relief on this claim.

**6.** *Conclusion*

Based on all of the foregoing, the Court concludes that Petitioner is not entitled to habeas corpus relief on any of his claims. As a result, Petitioner's Petition will be dismissed with prejudice.

## CERTIFICATE OF APPEALABILITY

In the event Petitioner files a notice of appeal from the Order and Judgment in this case, and in the interest of conserving time and resources, the Court now evaluates the

claims within the Petition for suitability for issuance of a certificate of appealability

(COA), which is required before a habeas corpus appeal can proceed. 28 U.S.C. §

2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11(a), Rules

Governing Section 2254 Cases.

A COA will issue only when a petitioner has made "a substantial showing of the

denial of a constitutional right."  28 U.S.C. § 2253(c)(2). The Supreme Court has

explained that, under this standard, a petitioner must show "that reasonable jurists could

debate whether (or, for that matter, agree that) the petition should have been resolved in a

different manner or that the issues presented were adequate to deserve encouragement to

proceed further.*" Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and

punctuation omitted).

When a court has dismissed a petition or claim on procedural grounds, in addition

to showing that the petition "states a valid claim of the denial of a constitutional right," as

explained above, the petitioner must also show that reasonable jurists would find

debatable whether the court was correct in its procedural ruling. *Slack,* 529 U.S. at 484.

When a court has dismissed the petition or claim on the merits, the petitioner must show

that "reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong." *Id.* at 484. The COA standard "requires an overview of the

claims in the habeas petition and a general assessment of their merits," but a court need

not determine that the petitioner would prevail on appeal. *Miller-El*, 537 U.S. at 336.

Here, the Court has dismissed one of Petitioner's claims on procedural grounds (and alternatively on the merits), and the remaining claims on the merits. The Court finds that additional briefing on the COA is not necessary. While this may have been a factually close case for the jury to decide, it is not a legally close case under the AEDPA standard of review. Having reviewed the record again, the Court concludes that reasonable jurists would not find debatable the Court's decision on the procedural issues and the merits of the claims raised in the Petition and that the issues presented are not adequate to deserve encouragement to proceed further. As a result, the Court declines to grant a COA on any issue or claim in this action.

If he wishes to proceed to the United States Court of Appeals for the Ninth Circuit, Petitioner may file a notice of appeal in this Court, and simultaneously file a motion for COA in the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b), **within thirty (30) days after entry of this Order**.

## ORDER

**IT IS ORDERED:**

1.   Respondent's Motion for Summary Judgment (Dkt.19) is GRANTED. Petitioner's Petition is DISMISSED with prejudice.

2.   The Court will not grant a Certificate of Appealability in this case. If Petitioner chooses to file a notice of appeal, the Clerk of Court is ordered to forward a copy of this Order, the record in this case, and Petitioner's notice of appeal, to the United States Court of Appeals for the Ninth Circuit.

**SO ORDERED.**

DATED:  March 28, 2011

Honorable Edward J. Lodge
U. S. District Judge